# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| HELEN ARMSTRONG, | Case No.: 2:17-cv-02528-APG-CWH |
| Plaintiff | **Order Granting Motion to Dismiss** |
| v. | [ECF No. 65] |
| TERRY REYNOLDS, et al., | |
| Defendants | |

Plaintiff Helen Armstrong sues four Nevada State officials in their individual capacities under 42 U.S.C. § 1983 and Nevada state law. She alleges that the defendants violated her substantive and procedural due process rights in the handling of her whistleblower complaint against her former employer. The defendants move to dismiss, arguing that Armstrong's amended complaint fails to state claims upon which relief can be granted or that, in the alternative, they are immune from suit.

The parties are familiar with the facts, so I will not repeat them here except where necessary. In her twelve-count amended complaint,[1] Armstrong alleges the defendants violated her substantive and procedural due process rights (Counts I and IV) and federal and state Occupational Safety and Health Administration (OSHA) regulations (Count II). She also asserts claims for civil conspiracy (Count III), fraud (Counts V, VI, and IX), intentional infliction of emotional distress (IIED) (Count X), negligent infliction of emotional distress (NIED) (Count XI), and malfeasance, misfeasance, or nonfeasance in office (Counts XII–XIV).

---

[1] Armstrong's original complaint contained fourteen counts. She withdrew two counts in her amended complaint but kept the original numbering, leaving twelve counts numbered I–VI and IX–XIV. I refer to her counts by these numbers throughout this order.

I dismiss Counts I and IV because Armstrong fails to allege facts that indicate she was denied a recognized property or liberty interest in violation of the federal or Nevada constitutions. I dismiss Count II because the statute and regulation upon which Armstrong relies do not contain a private right of action. I dismiss Count III because Armstrong fails to state a claim for civil conspiracy. I dismiss Counts IX, XI, XIII, and XIV because the defendants are entitled to discretionary-function immunity from those claims. I dismiss Counts V and VI because Armstrong does not meet the heightened pleading standard required for fraud claims in Federal Rule of Civil Procedure 9(b). I dismiss Count X because Armstrong fails to state a claim for IIED. Finally, I dismiss Count XII because it fails as a matter of law.

**I.     ANALYSIS**

    **A.     Motion to dismiss standard**

A properly pleaded complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief."[2] While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."[3] The complaint must set forth coherently "who is being sued, for what relief, and on what theory, with enough detail to guide discovery."[4] "Factual allegations must be enough to rise above the speculative level."[5] To survive a motion to dismiss, a complaint must "contain[] enough facts to state a claim to relief that is plausible on its face."[6]

---

[2] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[4] *See, e.g., McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1995).
[5] *Twombly*, 550 U.S. at 555.
[6] *Iqbal*, 556 U.S. at 696 (internal quotation marks and citation omitted).

District courts must apply a two-step approach when considering motions to dismiss.[7] First, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiff's favor.[8] Legal conclusions, however, are not entitled to the same assumption of truth even if cast in the form of factual allegations.[9] Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice.[10] Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief.[11] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[12] Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief."[13] If the claims do not cross the line from conceivable to plausible, the complaint must be dismissed.[14] "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the [district] court to draw on its judicial experience and common sense."[15]

---

[7] *Id.* at 679.

[8] *Id.*; *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247–48 (9th Cir. 2013).

[9] *Iqbal*, 556 U.S. at 679; *Brown*, 724 F.3d at 1248.

[10] *Iqbal*, 556 U.S. at 678.

[11] *Id.* at 679.

[12] *Id.* at 663.

[13] *Id.* at 679 (internal quotation marks and citation omitted).

[14] *Twombly*, 550 U.S. at 570.

[15] *Iqbal*, 556 U.S. at 679.

**B.     Counts I and IV: Violations of Due Process under the Federal and Nevada State Constitutions**

In these counts, Armstrong alleges that the defendants violated her procedural and substantive due process rights under the federal and Nevada constitutions[16] by mishandling her whistleblower claim against her former employer. She asserts that she lost her job and any expectation of reinstatement as a result of the allegedly incomplete investigation into her claim. The defendants argue that Armstrong has not alleged a loss of a protected liberty or property interest. Armstrong responds that her salary is property and that the defendants' actions deprived her of her job and, as a result, her salary, without due process of law.

### 1.     Procedural Due Process

"The Due Process Clause forbids the governmental deprivation of substantive rights without constitutionally adequate procedure."[17] To prevail on a procedural due process claim, a plaintiff must establish: (1) a constitutionally protected liberty or property interest; (2) a deprivation of that interest by the government; and (3) the lack of adequate process.[18] Property interests may be created in employment "if there are such rules or mutually explicit understandings that support [a plaintiff's] claim of entitlement to the benefit and that he may invoke at a hearing."[19] These interests are most often discussed in the context of public employment, but the test is the same when the property interest is claimed from private

---

[16] The Supreme Court of Nevada has relied on federal precedent in determining the scope of Nevada's Due Process clause. Therefore, the analysis for both counts is the same. *Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home Mortgage*, 388 P.3d 970, 972 n.3 (Nev. 2017).

[17] *Shanks v. Dressel*, 540 F.3d 1082, 1090–91 (9th Cir. 2008).

[18] *Id.* at 1090.

[19] *Perry v. Sindermann*, 408 U.S. 593, 601 (1972).

employment: an employee "must show that he had more than a 'unilateral expectation' of continued employment; he must demonstrate a 'legitimate claim of entitlement.'"[20] Employees have a "property interest" in the terms and conditions of their employment if that interest is established "by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."[21]

Armstrong has not alleged such an entitlement to her job. While she had held her job for many years, she does not allege facts indicating that she had more than a unilateral expectation of continued employment (such as an employment contract guaranteeing a certain term of employment). Accordingly, she fails to state a claim for a violation of her right to procedural due process under the federal or Nevada state constitutions. But amendment would not necessarily be futile. I dismiss her procedural due process claim with leave to amend if she can allege facts showing she had more than a unilateral expectation of continued employment.

### 2. Substantive Due Process

Much like claims for procedural due process, a threshold requirement for a substantive-due-process claim is the termination or revocation of an existing property interest in a benefit created by an independent source, such as state or federal law.[22] While public employment can fall under this category by virtue of federal or local laws that authorize hiring or pay scale,[23] private employment does not. Armstrong does not allege facts that establish a protected property

---

[20] *Merritt v. Mackey*, 827 F.2d 1368, 1371 (9th Cir. 1987) (applying the test to private employment) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

[21] *Roth*, 408 U.S. at 577; *see also Merritt*, 827 F.2d at 1371.

[22] *Roth*, 408 U.S. at 576.

[23] *See Rabkin v. Dean*, 856 F. Supp. 543, 549 (N. D. Cal. 1994).

interest in her job for substantive due process purposes, and this claim therefore fails. I dismiss this claim with prejudice because amendment would be futile.

**B.      Count II: Violation of OSHA § 11(c) or Nevada Revised Statutes § 618.445(3)**

In this count, Armstrong alleges that the defendants violated the federal and state OSHA laws that prohibit retaliation against employees who report OSHA violations.[24] Specifically, she contends the defendants failed to conduct an appropriately thorough investigation into her whistleblower claim, in violation of 29 U.S.C. § 660(c)(2) (also known as OSHA § 11(c)) and Nevada Revised Statutes § 618.445(3).

The defendants argue that statutes do not create a private cause of action for employees to sue OSHA officials who conduct investigations and that, even if they did, the statutes require only whatever investigation the OSHA Secretary or state Division Administrator deems "appropriate." Armstrong concedes that courts have held that these statutes do not create a private right of action against employers, but contends that she may sue the officials responsible for investigating her claims if the investigation violates the law.

Under Nevada law, "when an administrative official is expressly charged with enforcing a section of laws, a private cause of action generally cannot be implied."[25] In *Baldonado v. Wynn Las Vegas, LLC*, the Supreme Court of Nevada held that no private cause of action was created in the statutory provision requiring the state Labor Commissioner to enforce labor laws and resolve labor complaints, and that the plaintiff "had no right to obtain relief in the district court under that statute."[26] Like the statute at issue in *Baldonado*, Nevada Revised Statutes

---

[24] 29 U.S.C. § 660(c)(2); Nev. Rev. Stat. § 618.445(3).
[25] *Baldonado v. Wynn Las Vegas, LLC*, 194 P.3d 96, 102 (Nev. 2008).
[26] *Id.* at 104–105.

6

§ 618.445(3) charges the Division Administrator of Nevada OSHA with enforcing the workplace-safety and anti-retaliation provisions in occupational safety and health statutes by conducting an investigation the Administrator deems "appropriate." Nothing in the statute shows an intent to create a private cause of action against the Nevada OSHA officials who participated in the investigation.

Likewise, under federal law, to have a private cause of action the plaintiff must show either an express term in a statute or congressional intent to confer such a right.[27] This is true even if the plaintiff can show she was harmed as a result of the violation.[28] Nothing in the OSHA Act shows Congress intended to create a right for employees to sue the officials responsible for investigating their complaints. As with the state statutes, Armstrong does not argue that such intent exists or point to case law in which this type of claim was permitted. The Second Circuit has considered a similar issue and noted that, under OSHA, employees have the right to request a workplace inspection but otherwise "have a limited role in the enforcement of the Act" and may not "compel the Secretary to adopt a particular standard" in the investigation of their claims.[29] It is not up to Armstrong to determine what manner of investigation was appropriate in her case. That determination remained with the Division Administrator and the officials following his instruction.

To the extent Armstrong argues that the lack of a private right of action allows officials to violate the law without redress, her remedy was an appeal or request for review of the dismissal,

---

[27] *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979).

[28] *Id.*

[29] *Donovan v. Occupational Safety & Health Review Com'n*, 713 F.2d 918, 926 (2d Cir. 1983) (citing *Marshall v. OSHRC*, 635 F.2d 544, 550–51 (6th Cir. 1980); *Oil, Chemical & Atomic Workers Intern. Union v. OSHRC*, 671 F.2d 643, 649 (D.C. Cir. 1983)).

either under federal or state OSHA regulations.[30] Armstrong did not appeal the dismissal of her complaint and does not allege otherwise. I therefore dismiss these claims with prejudice because they fail as a matter of law and no amendment would cure the defect.

### C. Discretionary-Function Immunity

The defendants argue that they are entitled to discretionary-function immunity from all of Armstrong's state-law claims (Counts III, V, VI, and IX–XIV). They argue that the actions giving rise to these claims were within the scope of their discretionary functions as state officials. Armstrong responds that discretionary-function immunity does not apply to illegal conduct.

Nevada Revised Statutes § 41.032(2) provides that no action may be brought against an officer or employee of Nevada "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions or of any officer, employee, or immune contractor of any of these, whether or not the discretion involved is abused."[31] The Supreme Court of Nevada has adopted the United States Supreme Court's *Berkovitz-Gaubert*[32] test to determine whether a state official's actions are shielded from suit by discretionary immunity.[33] To qualify, a state official's action must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy.[34] "[I]f the injury-producing conduct is an integral part of governmental policy-making or planning, if the imposition of liability might

---

[30] 29 U.S.C. § 660(a); Nev. Rev. Stat. § 618.435(1).

[31] Nev. Rev. Stat. § 41.032(2).

[32] *See Berkovitz v. United States*, 486 U.S. 531 (1988); *United States v. Gaubert*, 499 U.S. 315 (1991).

[33] *Martinez v. Maruszczak*, 168 P.3d 720, 728–29 (Nev. 2007); Nev. Rev. Stat. § 41.032(2).

[34] *Martinez*, 168 P.3d at 729.

8

jeopardize the quality of the governmental process, or if the legislative or executive branch's power or responsibility would be usurped, immunity will likely attach under the second criterion."[35] Courts need not determine that a state actor "made a conscious decision regarding policy considerations."[36] The inquiry instead focuses "on the nature of the actions taken and on whether they are susceptible to policy analysis."[37] Where there is no policy or statute making the act a purely ministerial one, but where the actor's personal decision is made in furtherance of stated goals and policies, the statute protects the actor.[38]

Discretionary-function immunity is not available for intentional torts and bad-faith conduct,[39] so Armstrong's claims for civil conspiracy (Count III), fraud by intentional misrepresentation and concealment (Counts V and VI), IIED (Count X), and malfeasance in office (Count XII) cannot be dismissed on this basis. Armstrong's remaining state-law claims are negligence based: fraud by negligent misrepresentation (Count IX), NIED (Count XI), and negligent malfeasance and nonfeasance while in office (Counts XIII and XIV). The defendants argue that the conduct underlying these claims was discretionary because it related to their investigation of Armstrong's whistleblower claim. Armstrong responds that violating established policies can never be a discretionary decision.

Armstrong does not allege facts showing that the defendants violated established policies. She generally alleges that the investigation was not appropriate, but as discussed above the

---

[35] *Id.* (internal citations and quotations omitted).
[36] *Id.* at 728.
[37] *Id.*
[38] *Ransdell v. Clark County*, 192 P.3d 756, 763 (Nev. 2009).
[39] *Franchise Tax Bd. of Cal. v. Hyatt*, 335 P.3d 125, 139 (Nev. 2014) (holding that intentional torts are exempt from statutory discretionary-function immunity), *vacated on other grounds*, 136 S. Ct. 1277 (2016).

9

determination of what actions are "appropriate" is left to the discretion of the Division Administrator. Decisions related to investigating Armstrong's claim (such as when and if to issue subpoenas or close the file) involve elements of judgment and choice. These choices are grounded on public policy concerns like safety in the workplace (and codified in the Nevada OSHA Act). Armstrong's allegations, taken as true, indicate that the defendants opened an investigation and made choices in how to pursue and close that investigation. This is the kind of activity protected under the discretionary-function immunity statute. I therefore dismiss Counts IX, XI, XIII, and XIV with prejudice because the defendants are immune from suit.

### D. Count III: Civil Conspiracy

In this count, Armstrong alleges that the defendants conspired to violate her constitutional rights through the investigation. The defendants argue this claim fails because Armstrong asserts conclusory statements that allege only a possibility of misconduct and alleges no facts showing an agreement between the parties to injure her. They also argue that the intracorporate conspiracy doctrine bars this claim.

"An actionable civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage."[40] However, "agents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage."[41] This limitation, known as the intracorporate conspiracy doctrine, bars liability when the allegation is

---

[40] *Collins v. Union Fe. Sav. & Loan Ass'n*, 662 P.2d 610, 622 (Nev. 1983).

[41] *Id.*; *Chemeon Surface Technology, LLC v. Metalast Int'l, Inc.*, 312 F.Supp 944, 953 n.7 (D. Nev. 2018).

10

that employees of the same or a related entity, including government agencies, conspired to violate a constitutional right.[42]

Here, Armstrong alleges that various orders related to her claim came from the top and worked their way down the chain to agency employees. The top of the chain is the Deputy Director of the Department of Business and Industry, defendant Terry Reynolds. This department governs the Division of Industrial Relations,[43] of which defendant Steve George is the Administrator. The Division of Industrial Relations oversees Nevada OSHA under Nevada Revised Statutes §§ 618.029 and 618.069. Defendant Jess Lankford is the Chief Administrative Officer of Nevada OSHA, and oversees defendant Lara Pellegrini, the Whistleblower Chief Investigator for Nevada OSHA. Armstrong's allegations follow this chain. She alleges that Reynolds ordered George, who ordered Lankford, not to tell Armstrong details about the investigation.[44] She also alleges that Reynolds, through George, instructed Lankford to tell case investigator Rick Lucas to "stand down" on his investigation.[45] Armstrong further alleges that Lankford told Armstrong's representative that he was "under orders" from George about what he could and could not tell Armstrong.[46] Finally, Armstrong alleges that Lankford complained of being manipulated by George and Reynolds.[47] Armstrong refers to George, Lankford, and

---

[42] *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1074–75 (D. Ariz. 2012) (citing *Celestin v. City of New York*, 51 F. Supp. 2d 420, 434 (E.D. N.Y. 2008) ("[W]here the individual defendants are all employees of the institutional defendant, a claim of conspiracy will not stand.")).

[43] Nev. Rev. Stat. § 232.510(f).

[44] ECF No. 57 at ¶ 32(b).

[45] *Id.* at ¶ 32(d).

[46] *Id.* at ¶ 32(h).

[47] *Id.* at ¶ 32(i).

11

Pellegrini as Reynolds's "underlings."[48] The allegations, therefore, show that the defendants were acting in their official capacities on behalf of Nevada OSHA and the associated departments. There are no allegations that the defendants were operating outside their official capacities and Armstrong does not argue that they did. Count III therefore fails as a matter of law[49] and I dismiss it with prejudice.

### E. Counts V and VI: Fraud by Intentional Misrepresentation and Fraud by Concealment

Federal Rule of Civil Procedure 9 requires a party to "state with particularity the circumstances constituting fraud or mistake." Rule 9's "particularity" standard requires a plaintiff to "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false."[50] This higher level of detail is required "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."[51] Thus, claims grounded in fraud or mistake must meet both Rule 8's "plausibility" standard and Rule 9(b)'s "particularity" standard.

Counts V and VI are grounded in fraud and subject to Rule 9(b)'s heightened pleading standard.[52] Count V asserts fraud by intentional misrepresentation and Count VI asserts fraud by concealment. Armstrong alleges that the defendants conspired to lie to her about, and conceal details of, their investigation. She alleges that the various misrepresentations and concealments

---

[48] *Id.*

[49] *See Donahoe*, 869 F. Supp. 2d at 1075.

[50] *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).

[51] *Semegen v. Weidner*, 78 F.2d 727, 731 (9th Cir. 1985).

[52] *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004).

were undertaken to cover up misconduct and keep her in the dark about the progress of her claim. The defendants argue that both claims fail to meet Rule 9(b)'s pleading standard. Because the elements of each claim are different, I address them separately.

1. Count V: Fraud by Intentional Misrepresentation

To state a claim for fraud by intentional misrepresentation, Armstrong must allege that (1) the defendants falsely represented a material fact, which they knew to be false; (2) the defendants intended Armstrong to rely on the misrepresentation; (3) Armstrong detrimentally relied on the misrepresentation; and (4) the misrepresentation proximately caused damages.[53]

Count V includes 12 paragraphs of what Armstrong alleges to be fraudulent misrepresentations by various defendants. The claim, however, falls short of Rule 9(b)'s requirements. Count V contains mostly conclusory allegations about what the defendants knew regarding the truth of various statements. Armstrong does not specify what conduct is attributed to which defendant and omits Terry Reynolds completely from this count, leaving it unclear whether she is asserting this claim against him. "Rule 9(b) does not allow a complaint to merely lump multiple defendants together, but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of allegations surrounding his alleged participation in the fraud."[54] Armstrong has improperly lumped together multiple defendants, and the defendants cannot be expected to sort out what conduct is relevant to the claim against each defendant.

In addition to the "who" requirement, the heightened pleading standard requires Armstrong to specify the "where, when, and how" of the alleged misrepresentations, as well as

---

[53] *Chen v. Nev. State Gaming Control Bd.*, 994 P.2d 1151, 1152 (Nev. 2000).

[54] *United States v. Corinthian Colleges*, 655 F.3d 984, 997–98 (9th Cir. 2011) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007)).

13

what is false or misleading about them. While she provides some detail for some statements, she does not do so for all of them. And she fails to plead facts showing she relied on the statements and that the defendants intended to induce her to act or refrain from acting in making the statements. This claim fails to meet even Rule 8's pleading standard. I therefore dismiss Count V without prejudice. Armstrong may amend if she can allege facts to meet Rule 8 and Rule 9(b)'s pleading standards.

2. <u>Count VI: Fraud by Concealment</u>

To state a claim for fraudulent concealment, a plaintiff must allege that (1) the defendant concealed or suppressed a material fact, (2) the defendant was under a duty to disclose the fact to the plaintiff, (3) the defendant intentionally concealed or suppressed the fact for the purpose of inducing the plaintiff to act differently than she would if she knew the fact, (4) the plaintiff was unaware of the fact and would not have acted as she did if she had known of the concealed or suppressed fact, and (5) the plaintiff suffered damages as a result.[55]

This count also falls short of Rule 9(b)'s pleading standard because it alleges only the "what," but not the "who, when, where, or how" of the alleged concealments. Armstrong alleges that all the defendants generally participated in concealing the correspondence they engaged in with her employer. But she does not allege specific concealments or give any further details of the alleged fraud. Nor does Armstrong allege that the defendants were under a duty to disclose the contents of the communications, that they failed to do so intentionally with the purpose of inducing her action or inaction, and how she would have acted differently had she known the contents of the correspondence. She therefore does not meet even Rule 8's pleading standard. I

---

[55] *Nevada Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1415 (D. Nev. 1995) (citing Nevada Jury Instruction 9.03).

14

dismiss this count without prejudice and with leave to amend.  Armstrong may amend this count if she can allege additional facts to meet the pleading standards of Rules 8 and 9(b).

### F. Count X: IIED

In Count X, Armstrong alleges that the defendants engaged in the alleged misconduct intentionally to cause her emotional distress.  She alleges that she had to be admitted to the hospital for heart surgery as a result of the emotional distress she suffered.

A claim for IIED requires a plaintiff to prove that the defendant engaged in extreme and outrageous conduct that intentionally or recklessly caused severe emotional distress or bodily harm.[56]  To be extreme and outrageous, the conduct must be "outside all possible bounds of decency and regarded as "utterly intolerable in a civilized community."[57]

The defendants argue that Armstrong has failed to allege extreme or outrageous conduct and that the only physical harm she suffered occurred before she filed the whistleblower complaint, so she failed to properly allege causation.  Armstrong responds that the heart surgery occurred after defendant Pellegrini's first wrongful action and that the other defendants' actions resulted in her not being reinstated to her job, which has been emotionally distressing.

Armstrong does not state a plausible IIED claim.  Count X does not detail specific behavior by the defendants; it asserts only the conclusory statement that the defendants' actions in general "were performed intentionally in order to inflict emotional distress upon [her]."[58]  She does not allege what conduct she considers to be extreme and outrageous or what emotional distress that conduct caused (outside the hospital stay that predated her whistleblower claim).

---

[56] *Hyatt*, 335 P.3d at 147.

[57] *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (citation and internal quotations omitted).

[58] ECF No. 57 at ¶ 52.

15

1 The defendants are thus left to guess what conduct underlies this claim and the damage their
2 conduct allegedly caused. I therefore dismiss this claim but grant Armstrong leave to amend if
3 she can allege specific facts to support it.

### G. Count XII

In this count, Armstrong alleges that the defendants' actions were "performed illegally, immorally, and wrongfully" while the defendants were "carrying out their duties in office."[59] The defendants argue that Nevada does not recognize a cause of action for malfeasance in office.

Nevada Revised Statutes § 283.440 addresses malfeasance of public officers but does not provide a private cause of action for malfeasance while in office.[60] Instead, a "complainant" may file a verified complaint in the district court accusing a State officer of malfeasance related to his or her job duties.[61] The remedy is removal from office. Nothing in the statutes allows for recovery of damages by the complainant against the officer. Count XII therefore fails as a matter of law and I dismiss it with prejudice because amendment would be futile.

## II. Conclusion

IT IS THEREFORE ORDERED that the defendants' motion to dismiss **[ECF No. 65] is GRANTED**. Counts II, III, IX, XI, XII XIII, and XIV are dismissed with prejudice. Counts I, IV, V, VI, and X are dismissed without prejudice. Armstrong may file an amended complaint by

/ / / /

/ / / /

---

[59] *Id.* at ¶ 58.

[60] *See Ross v. Sandoval*, 2017 WL 6000342 at *12 (D. Nev. Dec. 4, 2017).

[61] Nevada Revised Statutes § 283.300 allows for a written accusation against a local government official by the grand jury of that county.

16

March 29, 2019 if she can cure the defects described in this order. The failure to do so will result in the closing of this case.

DATED this 6th day of March, 2019.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE